Filed 6/30/16  T.N. v. Superior Court CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| T.N.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Real Party in Interest. | A148139<br><br>(San Francisco County<br>Super. Ct. No. JD15-3368) |

T.N. (mother) petitions this court for extraordinary writ review of a juvenile court order bypassing reunification services and setting a selection-and-implementation hearing for her baby son, R.N.  She argues that the juvenile court's denial of reunification services should be reversed, both because she had recently made progress in addressing her history of substance abuse and because she received inadequate notice of one of the two interrelated statutory grounds relied upon to deny her services.  We are not persuaded by these contentions and deny the petition.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Mother has four older children, none of whom were in her care when she was pregnant with R.N.  Mother's oldest child was adopted at the age of three after mother

1

failed to reunify with the child and her parental rights were terminated, another child was placed for adoption immediately after she was born, and a third child was living with his godmother through a family arrangement.

Mother and R.M. (father) had a child together (mother's fourth) in April 2014. Mother and the baby tested positive for cocaine and crystal methamphetamine. The child was placed with father but later was taken from his care, and both parents' parental rights were terminated a few days before R.N. was born. During the proceedings related to the child, mother hit father in a courtroom hallway causing his ear to bleed, and restraining orders were put in place to protect father and the older sibling from mother.

Mother was hospitalized during her pregnancy with R.N. after she suffered a ruptured gallbladder in November 2015, and she tested positive for methamphetamine and other drugs when she was admitted to the hospital. She remained hospitalized and gave birth to R.N. after she was induced into labor in early December. Real party in interest San Francisco Human Services Agency (Agency) filed the dependency petition in these proceedings three days later after it received reports of mother's positive drug test. The petition alleged that mother had a substance-abuse problem that led to R.N. suffering withdrawal symptoms after his birth and that mother and father had a relationship affected by domestic violence. The petition also alleged that the parents had "a long [and] extensive" history with child protective services (CPS).

The Agency's detention report recommended that reunification services not be provided in these proceedings "per § 361.5 of the W&I Code," an apparent reference to Welfare and Institutions Code section 361.5, subdivision (b),[1] permitting the bypass of reunification services under certain circumstances. R.N. was ordered detained.

The assigned social worker and various extended family members participated in a team decision meeting in late December 2015 or early January 2016 to discuss options for R.N., but neither parent showed up despite receiving notice of the meeting. The

---

[1] All statutory references are to the Welfare and Institutions Code.

parents were permitted weekly, two-hour visits with R.N., which went well "for the most part." Mother had her gallbladder removed on January 15.

In the disposition report filed on January 20, the Agency recommended that no reunification services be provided to the parents under section 361.5, subdivision (b)(10), which permits the bypass of services where reunification services previously have been terminated for any siblings or half siblings of the minor. The disposition report provided more detail about mother's "extensive CPS history" dating back to 1999, including the termination of parental rights to two older siblings. The Agency recommended that the juvenile court adjudge R.N. a dependent child and proceed to a selection-and-implementation hearing under section 366.26.

Mother missed three drug tests in January but regularly tested clean after she began testing later that month. Mother entered a residential treatment program in February 2016 after the narcotics she took for her gallbladder surgery left her system, but she left the program after six days. About a week later, she entered another residential treatment program.

In advance of the disposition hearing, the Agency asked the juvenile court to take judicial notice of seven documents from the dependency proceedings regarding the parents' older joint child, including the December 2015 order terminating their parental rights. The Agency also requested that the court take judicial notice of four documents from the dependency proceedings regarding mother's oldest child (R.N.'s half sister), including the February 2004 order terminating mother's parental rights. No party objected, and the juvenile court took judicial notice of the documents.

A contested jurisdiction/disposition hearing was held over three days in March and April 2016. The social worker assigned to the case testified that mother had been in a residential treatment program for about three weeks, and the program was expected to last about six months or longer. Mother reportedly was doing well in the program, and she was participating, following directions, and engaging in therapy. She also was participating in dependency drug court and doing well. So far as the social worker was

3

aware, however, neither parent had engaged in domestic-violence counseling despite their history of domestic violence.

Mother testified about her recent participation in various programs to promote her sobriety and mental health. She acknowledged that she had previously participated in two other residential treatment programs but relapsed both times. Mother testified that she was benefitting from her current program because she was "learning about [her] triggers" and "learning how to cope with that [wanting to use drugs] and work through it without going to use." Unlike in previous programs where mother "slipped through the cracks," mother was "learning that I need to speak up when I—how I feel or when I feel like using. And I'm learning how to accept that I do have a drug problem, and I want to address it." She also had undergone one counseling session for domestic-violence issues and was "learning to know what my angers are and how to control them . . . better." Mother testified that she no longer had an urge to use drugs, she regretted using them in the past and losing parental rights to her older daughter, and she "just want[ed] to be a mom to my baby." She acknowledged on cross-examination that she had been using drugs off and on for nearly 20 years, since she was 14. Father also testified at the hearing.

Following the presentation of evidence, counsel for the Agency asked that the dependency petition be amended to conform to proof. Without objection, the petition was amended to include allegations that mother lost her parental rights to two of her other children. The Agency's counsel then argued that the court should sustain the petition as amended and that no reunification services be provided under section 361.5, subdivision (b)(10) as well as under subdivision (b)(11), which had not previously been raised. R.N.'s attorney joined the recommendation. Mother's counsel did not object to the fact that the Agency had not previously cited section 361.5, subdivision (b)(11) as a basis to bypass services. Counsel argued that mother had shown she was committed to staying sober and had made reasonable efforts to address the problems that led to services being bypassed in previous proceedings (§ 361.5, subd. (b)(10) & (11)).

4

The court sustained the allegations of the amended dependency petition, adjudged R.N. a dependent minor, and ordered under section 361.5, subdivision (b)(10), that reunification services not be provided to the parents in light of their failure to reunify with R.N.'s sibling.  The court then asked whether the Agency was asking for a finding under section 361.5, subdivision (b)(11), and the court made such a finding (that the parents would not receive reunification services because their parental rights to a sibling had been terminated) after the Agency's counsel confirmed she was requesting a ruling under that provision.  The court further found that reunification with the parents was not in R.N.'s best interest.  A selection-and-implementation hearing under section 366.26 was scheduled for August 4.

Both parents filed notices of intent to file a writ petition, but only mother filed a petition for extraordinary writ review.

II.
DISCUSSION

Mother argues that the juvenile court erred when it denied her reunification services, but we disagree.

When a child is removed from the custody of his or her parents, the juvenile court must order reunification services to the parents unless one of several statutory exceptions applies.  (§ 361.5, subds. (a) & (b).)  Section 361.5, subdivision (b)(10) and (11) provide exceptions to the provision of services where a parent has failed to reunify with another child ((b)(10)) or where the parental rights to another child were terminated ((b)(11)) if the court finds that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ."  When an exception applies under subdivision (b)(10) or (11), the court *shall not* order reunification services unless it finds, by clear and convincing evidence, that reunification is in the best interest of the child.  (§ 361.5 ,subdivision (c).)  In other words, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources," ' " and it is the parent's burden to change that assumption.  (*In re William B.* (2008) 163 Cal.App.4th

5

1220, 1227.)  "We review an order denying reunification services by determining if substantial evidence supports it."  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 196; see also *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.)

Mother does not dispute that she failed to reunify with two older children or that her parental rights to them were terminated, and she does not challenge the jurisdictional findings to that effect.  She contends, however, that she made reasonable efforts to address the problem that led to the siblings' removal, namely, her long history of drug abuse, and she points mostly to her own testimony that she was ready to remain drug-free despite previous failures to do so.  "[T]he 'reasonable effort' language in the bypass provisions [do not] mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable.  It is certainly appropriate for the juvenile court to consider the *duration*, *extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness.  And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made."  (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914, original italics.)  The juvenile court appropriately considered these relevant factors when it denied reunification services to mother.  The court stated it had "nothing but respect [for mother] that she's been clean for a month," but noted that mother tested positive for drugs during her pregnancy at a time when an older sibling was the subject of dependency proceedings, had missed the team-decision meeting when R.N. was first removed from her care without a credible excuse, had left her first residential treatment program after only a few days because of anger issues, and had only just begun to address her decades-long history of substance abuse.  We thus disagree with mother's contention that there was "insufficient evidence presented that [she] was not on the road to recovery in many important ways."

Once the juvenile court found that an exception to the provision of reunification services applied because mother had not made reasonable efforts to treat the problems

that led to the removal of her older children, the juvenile court was prohibited from offering reunification services unless it found by clear and convincing evidence that reunification was in R.N.'s best interest. (§ 361.5, subd. (c).) Mother's trial attorney contended that there was clear and convincing evidence that it was in R.N.'s best interest to provide reunification services so that mother could show she could reunify with her son. R.N.'s attorney disagreed that it would be in the baby's best interest, because it would jeopardize his placement with a paternal uncle in Oregon. The juvenile court found that mother had not met her burden by even a preponderance of the evidence, let alone by clear-and-convincing evidence, because R.N. needed stability and would be best served by bonding with the proposed caretaker in Oregon. Mother does not challenge that finding, but she claims that the juvenile court nonetheless erred by "declaring that the burden was on the parent to show by clear and convincing evidence that family reunification services would be in the best interests of the child." To the contrary, once an exception is established, *the parent* has the burden of proving his or her child would benefit from the provision of court-ordered services. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 109; *In re William B.*, *supra*, 163 Cal.App.4th at p. 1227.) Given the baby's undisputed need for permanence and stability, we decline to disturb the juvenile court's conclusion that delaying a move to be with an out-of-state relative in order to provide services would not be in R.N.'s best interest.

We also reject mother's argument that she was deprived of due process because "she was never put on notice" that the Agency was seeking bypass of services under section 361.5, subdivision (b)(11), applicable where a parent previously has lost parental rights to a child. She does not dispute that she had adequate notice that the Agency sought to bypass services under subdivision (b)(10), applicable where a juvenile court previously had ordered termination of reunification services as to a sibling because the parent "failed to reunify" with the sibling. As a practical matter, in most situations where a parent fails to reunify with a child, parental rights are then terminated unless the court finds that an exception to adoption applies (§ 366.26, subd. (c)), meaning that where section 361.5, subdivision (b)(10) applies, subdivision (b)(11) will likely apply as well.

That was the case here, and the Agency detailed mother's history in its reports that recommended the bypass of reunification services. Mother also received notice before the disposition hearing that the Agency sought judicial notice of the orders terminating her parental rights to her older children, and the court judicially noticed the orders without objection. Mother testified to the effect that she had previously had her parental rights terminated, and she has never disputed that fact, either in the juvenile court or in this writ proceeding. In this context, we cannot agree that mother lacked notice that she would not receive reunification because her parental rights previously had been terminated. And even if we were to agree that mother lacked sufficient notice that the Agency would seek to bypass services under section 361.5, subdivision (b)(11), such error would not be grounds for reversal, because mother was properly denied reunification services under the separate grounds set forth in subdivision (b)(10).

Like the juvenile court, we commend mother for her recent efforts to address her longtime substance abuse. Because substantial evidence supports the juvenile court's order, we deny mother's request for an extraordinary writ.

### III.
#### DISPOSITION

Mother's petition for an extraordinary writ is denied on the merits. The decision is final in this court immediately. (Cal. Rules of Court, rule 8.452(i), 8.490(b)(2)(A).) Mother's request for a stay of the juvenile court's August 4, 2016 hearing is denied as moot.

_____

Humes, P.J.

We concur:


_____

Margulies, J.


_____

Dondero, J.


_T.N. v. Superior Court of San Francisco County_ (A148139)

9