Filed 7/14/23  In re L.D. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re L.D. et al., Persons Coming Under the Juvenile Court Law. | B314566, B314569 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 21CCJP02382A-B & 21CCJP02392C-D) |
| Plaintiff and Respondent, | |
| v. | |
| L.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas E. Grodin, Judge Pro Tempore. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

L.D. (Father) is the father of four children: L.D., Jr., D.D., Ad.D., and Au.D. (collectively, Minors).[1] The juvenile court took dependency jurisdiction over Minors based, among other things, on domestic violence between Father and S.R. (Mother), the mother of two of the children. The court ordered Minors removed from Father's custody, and in this consolidated appeal, we consider whether substantial evidence supports the juvenile court's finding that removal was warranted under the circumstances.

## I. BACKGROUND

### A. *The Dependency Investigation and Petition*

In March 2021, Father and Mother had a series of violent altercations while Minors and two of Mother's other children were present in the family home.[2] In these fights, Father struck Mother in the leg with a hammer, struck the back of her head with his fist, and bit her arm. Preceding these acts of violence, there had been other incidents: Father pushing Mother, Father closing a door on her foot, Father putting alcohol in Mother's

---

[1]    At the time the dependency petition was filed, L.D., Jr. was 10 years old, D.D. was eight years old, Ad.D. was three years old, and Au.D. was two years old.

[2]    The other two children are not at issue in this appeal.

2

contact lens case causing her eyes to burn, and Father kicking a hole in a bathroom door.

After one of these fights, Mother called 911 and Los Angeles County Sheriff's deputies arrested Father for inflicting corporal injury on a spouse. The deputies took photographs to document a bruise and a bite mark on Mother's upper left arm, which she said had been inflicted by Father three days earlier. The injuries on her arm, Mother explained, occurred after Father punched her in the back of the head and she moved to prevent him from continuing to hit her. Mother advised the deputies that over the course of their relationship there had been approximately 10 unreported incidents of domestic violence. Father denied all of Mother's allegations when questioned by the deputies.

Following Father's arrest, a social worker for the Los Angeles County Department of Children and Family Services (the Department) interviewed Mother, Father, and the four eldest children (none of those children showed any signs of physical abuse).

Mother explained that, over the course of the last nine months, her relationship with Father had deteriorated to the point that she had moved out of the family's home shortly before Father's arrest. On the day of Father's arrest, she came to the apartment to collect some personal items and Father became physically "aggressive," prompting her to call 911 for assistance. Mother told the social worker that she loved Father but she did not like "what he's doing to these kids"; for her children's mental health, she could no longer accept her relationship with Father

3

and planned to divorce him and seek a protective order.[3]  In view of Minors' exposure to the domestic violence, Mother welcomed the Department's involvement and support.

In Father's interview, he dismissed and downplayed the violent incidents with Mother.  For example, Father maintained it was Mother, not him, who contaminated her contact lens case.  With regard to the bite mark observed by deputies on Mother's upper arm, Father explained that during an argument his mouth happened to be open when Mother went to "aggressive[ly]" hug him; as a result, his mouth accidentally "made contact with her arm."  Father stated Mother went "overboard" when she had him arrested and pointed to her decision to bail him out of jail as evidence that the matter had been overblown.  Father also claimed Mother had mental health issues (but said she was "not dangerous").[4]

---

[3]  One month after Father's arrest, Mother obtained a three-year criminal protective order against Father.  With the exception of arranging visitation and the safe exchange of children, the order prohibited any communications or contact between Father and Mother and ordered him to stay 100 yards away from her.

[4]  Four days after stating Mother was not dangerous, Father sought a temporary restraining order protecting him, Ad.D., and Au.D. from Mother based on the contention that Mother was a danger to herself and others.  The court denied the order pending a hearing because Father's proof of violence by Mother was either nonexistent or "vague."  The record does not reveal how Father's request for a restraining order was ultimately resolved, but it appears Father may have decided to forego further pursuit of a protective order.

L.D., Jr. told the social worker that Father and Mother "always fight" but Father had "never laid a hand" on Mother. D.D. also described witnessing arguments between Father and Mother, which made him "sad"; he too denied seeing any physical altercations between them, however. C.G. said he heard "a lot" of arguing between Father and Mother and revealed he had heard sounds indicative of physical violence. As he put it, "I heard a bump. That's how I know [Father pushed Mother into a closet]." A.G. related he heard arguments between Father and Mother in the middle of the night that made him feel "afraid" and kept him awake. A.G. also said he saw Father push Mother and overheard her tell another family member that Father hit her in the leg with a hammer.

In May 2021, after determining the risk of abuse to Minors was "high", the Department filed two substantively identical dependency petitions (one on behalf of L.D., Jr. and D.D., the other on behalf of Ad.D., and Au.D.). The petitions alleged, among other things, that Father's history of domestic violence with Mother put Minors at substantial risk of serious physical harm.

At an initial detention hearing, the juvenile court detained Minors from Father due to a "whole host of potential dangers that are based on the history of this case." The court granted Father unmonitored visitation with L.D., Jr. and D.D. in the home of the paternal grandmother, with whom the two boys had been placed, and monitored visitation with Ad.D., and Au.D., who had been released into Mother's custody and care.

*B.    Jurisdiction and Disposition*

In advance of the jurisdiction hearings on the dependency petitions, a Department investigator re-interviewed Mother, Father, and the four eldest children.

During her interview, Mother recanted a number of her previous allegations and minimized others.  For example, she denied Father had contaminated her contact lens case.  Although she agreed Father may have pushed her "twice" when he wanted her to leave a room, she denied that he ever struck her with his fist on the back of the head or bit her on the arm.  Mother also stated that on the day police were called and arrested Father, Father had actually only "nudg[ed]" her to the ground.  Mother admitted she and Father were in regular communication with each other in violation of the criminal protective order but she described it as a positive development: "Before the criminal protective order, we didn't talk."

In his interview with the Department, Father suggested there was no proof of any allegations of physical violence by him against Mother.  When questioned about specific violent episodes in the past, Father denied culpability and identified Mother as the offending party: he said she contaminated her own contact lens case, he was defending himself from her when he kicked a hole in the bathroom door, and the bite mark on Mother's arm was her fault ("she grabbed me in a head lock to keep me quiet and I was saying help and she got me with my mouth open when I was asking for help").  Like Mother, Father conceded he was regularly communicating with Mother on issues unrelated to visitation, which was prohibited by the terms of the criminal protective order.

L.D., Jr. and D.D. re-affirmed that when Father and Mother were living together they often argued, but each child continued to deny witnessing any physical violence. C.G. and A.G. told the investigator that they heard "[l]ots of screaming and fighting." Although C.G. once again denied seeing any physical violence, A.G. reiterated that he saw Father push Mother.

In August 2021, the juvenile court held separate adjudication hearings on each petition. Reports and notices provided by the Department were admitted in evidence, and Father offered no evidence at either hearing.

The juvenile court sustained petition allegations that Father struck Mother's leg with a hammer, shoved her with his knees causing her to fall to the ground, bit her, pushed her, closed a door on her foot, and put alcohol in her contact lens case causing her eyes to burn. The court also found Mother put Father into a chokehold.[5] The court struck an allegation that Father pointed a gun at Mother as unsupported by the evidence. The court declared Minors dependent children and ruled it was premature to return Minors to Father because he currently posed a substantial danger to their well-being. As part of his case plan, the court ordered Father to undergo a 26-week domestic violence program.

## II. DISCUSSION

The juvenile court's decision to remove Minors from Father's custody is supported by the requisite substantial

---

[5]    The court also sustained allegations that Minors were at substantial risk of serious physical harm from Mother and Father's marijuana abuse.

7

evidence. As we shall explain, the juvenile court's finding of a danger to Minors' physical and emotional well-being if placed with Father is well justified in light of the domestic turmoil and violence to which Minors had been exposed, Mother's conduct in response to the violent incidents, Father's denial of any responsibility for the conditions giving rise to dependency jurisdiction, and the parents' knowing violation of the criminal protective order.

A juvenile court may not remove a child from a parent's custody unless it "finds clear and convincing evidence" that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code,[6] § 361, subd. (c)(1).) Our review of a removal order is for substantial evidence. (*In re I.R.* (2021) 61 Cal.App.5th 510, 520; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012 ["[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard"].)

Father does not challenge the juvenile court's jurisdiction findings that establish multiple episodes of domestic violence between the parents occurred. One child (A.G.) witnessed Father pushing Mother, another (C.G.) heard sounds strongly suggestive of violence, and all four of the older children consistently affirmed

---

[6] Undesignated statutory references that follow are to the Welfare and Institutions Code.

they were regularly subjected to verbal disputes between Father and Mother that often devolved into screaming matches, which left them feeling sad or, in case of at least one of the children, afraid and unable to sleep.

In Father's statements to Department personnel, he either disclaimed all responsibility for the violence or dismissed the incidents as trivial. Father's unwillingness to admit the extent of his role in the domestic violence that led to dependency jurisdiction supports a reasonable inference that similar misconduct by him is to be expected in the future. (*In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["Father denied a history of domestic violence and accused mother of fabricating the 2017 incidents, indicating that he is unwilling to admit his role in the domestic violence. The inference from his denial is that he is less likely to change his behavior in the future"]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) In addition, after Father's arrest, Mother and Father continued to have contact, including contact in violation of the criminal protective order that was meant to prevent further violent confrontations.

""Both common sense and expert opinion indicate spousal abuse is detrimental to children."' [Citation.] Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.' [Citations.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 134.) The detrimental effect of this domestic violence, which there is good reason to believe will recur, is an appropriate predicate for the juvenile court's removal order under section 361, subdivision (c). The danger of future domestic violence that would endanger the children is exacerbated by the parents'

demonstrated disregard for the protective order issued by the criminal court, and that knowing disregard of a court order also provides a sound foundation to believe no reasonable means short of removal from Father's custody would be effective in safeguarding Minors' physical health.

The case on which Father principally relies to argue the contrary, *In re Jasmine G.* (2000) 82 Cal.App.4th 282 (*Jasmine G.*), involved materially different facts and does not support reversal here. In contrast to the parents involved in *Jasmine G.* (*id.* at 288), Father never accepted responsibility for any of his actions which led to the filing of the petition; he instead steadfastly denied or downplayed the violence that occurred when speaking to the police, to the Department, and to the juvenile court. Moreover, unlike the parents in *Jasmine G.* (*id.* at 288-289), Father did not take any meaningful steps (e.g., enrolling in counseling or other services) during the three-month period between the filing of the petitions and the disposition hearings to address the domestic violence.

Finally, the fact that none of the children had yet suffered actual physical harm as a result of the violence between Father and Mother does not undermine the evidence supporting removal. "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

10

## DISPOSITION

The juvenile court's order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.