[No. A132589. First Dist., Div. Four. Feb. 3, 2012.]

In re GABRIEL K. et al., Persons Coming Under the Juvenile Court Law.
NAPA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Plaintiff and Respondent, v.
SHANON K., Defendant and Appellant.

## COUNSEL

Julie E. Braden for Defendant and Appellant.

Robert Westmeyer, County Counsel, and Jayne F. Herman, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**REARDON, J.**—The juvenile court declared minors Gabriel K. and Levi B. to be dependent children and denied the request of their mother—appellant Shanon K.—for reunification services. On appeal from the disposition order, the mother raises various challenges to the denial of reunification services. (See Welf. & Inst. Code,[1] § 361.5, subd. (b)(10) (§ 361.5(b)(10)).) We affirm the juvenile court's order.

## I. FACTS

### A. *Family History*

Minor Levi B. was born in October 1993 to appellant Shanon K. and presumed father Robert B.[2] A month earlier, Robert had been convicted of inflicting corporal injury on a spouse or cohabitant. He was sentenced to two years in prison. He was convicted of the same offense in February 1996. This time, he was given three years' probation. In 1998, Robert was convicted of felony possession of a controlled substance and misdemeanor driving under the influence. He was jailed for a year for these offenses.

In September 2000—while the family was living in Auburn—Placer County Child Protective Services learned of allegations of Shanon's emotional abuse of Levi. He was placed in the temporary guardianship of

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Robert is not an appellant. We include information about his circumstances as they are relevant to the issues presented by Shanon's appeal.

Shanon's mother—Sherry L. In November 2000, Shanon was convicted of misdemeanor being under the influence of a controlled substance and possession of a controlled substance. The following month, Robert was convicted of felony spousal battery, for which he was sentenced to serve 10 months in jail.

In April 2001, Gabriel was born to Shanon and presumed father Robert. In September 2001, Robert was convicted of misdemeanor possession of drug paraphernalia. He was placed on probation for three years, subject to serving 30 days in jail. Sherry L. was given formal legal guardianship of Levi in December 2001 in Placer County. Levi lived with her for about two years before returning to live with one or both of his parents, although the grandmother remained his legal guardian.

Shanon was convicted of misdemeanor battery in June 2002. As a result of Robert's March 2003 conviction for felony spousal battery, possession of a controlled substance and driving under the influence, his probation was revoked. He was sentenced to two years in prison. In March 2005, Robert was convicted of felony vehicle theft and sentenced to 16 months in prison.

In March 2007, Napa County officials found methamphetamine and drug paraphernalia at a home where Shanon had left Gabriel to be cared for. Gabriel was placed in protective custody. A dependency proceeding was instituted on his behalf. (§ 300, subd. (b).) Meanwhile, in criminal proceedings, Shanon was convicted of felony possession of a controlled substance and placed on probation for three years.

In May 2007, the allegations of the juvenile petition were sustained. Gabriel was made a dependent of the juvenile court. Shanon was offered reunification services, but failed to take advantage of them. She continued to use drugs, did not comply with the elements of her case plan, and failed to apprise caseworkers of her whereabouts. After an initial placement with Shanon's grandmother proved unsatisfactory, Gabriel was placed in foster care in December 2007.

In November 2007, Tyler G. was born to Shanon and presumed father Joel G. Soon after his birth, child protective services officials received a report that the infant was being abused by Shanon. Tyler was taken into protective custody, found to be a dependent child and placed with Joel in Solano County. Joel was given full custody of the child. Shanon was not offered reunification services in that case. In April 2008, Shanon's reunification services for Gabriel were terminated. She and Gabriel were not reunified. In June 2008, Shanon was convicted of misdemeanor being under the influence of a controlled substance. She was sentenced to 90 days in jail.

About this time, Robert established his paternity and was found to be Gabriel's presumed father. He was given reunification services and was

successfully reunified with Gabriel. In March 2009, Robert was given full legal and physical custody of Gabriel and the dependency proceedings were closed. Shanon was only allowed to have supervised visitation with Gabriel.

A month earlier, Shanon had been convicted of felony possession of a controlled substance. She was granted probation for three years. One condition of probation was that Shanon serve 120 days in jail. In October 2009, Robert was convicted of felony possession of a controlled substance and misdemeanor driving under the influence. He was given three years' probation and ordered to serve four days in jail.

In November 2009, Levi became a juvenile court ward after he was found to have possessed weapons on school grounds. (See Pen. Code, § 626.10.) Ultimately, child welfare and juvenile probation officials agreed that Levi would be best served in the juvenile dependency system. His juvenile probation was dismissed.

By January 2010, Robert was again incarcerated. While he was jailed, he allowed Levi and Gabriel to live with Shanon. In March 2010, Robert was convicted of two felonies—possession of a controlled substance and petty theft—and sentenced to serve another 16-month term in prison. In August 2010, Shanon completed drug court. She was soon under arrest again. In September 2010, when Robert was released from incarceration, Shanon refused to let him see Levi and Gabriel. By January 2011, Robert had returned to jail.

By February 2011, a warrant had been issued for Robert's arrest for a parole violation. At his arrest, he was found in possession of methamphetamine. Robert was jailed for possession of both methamphetamine and drug paraphernalia, conspiracy, and violation of parole. He expected to serve a prison term for these offenses. (See Health & Saf. Code, §§ 11364, 11378; Pen. Code, §§ 182, 3056.)

B. *Current Dependencies*

On March 29, 2011, law enforcement officials conducting a probation search of Shanon's home found significant amounts of drugs, drug paraphernalia and weapons within Gabriel's reach. These items reportedly included methamphetamine, glass smoking pipes, four rifles, and three shotguns. Shanon and the minors were not present during the search.

The following day, the social worker visited Shanon, who reported that she had been free of drugs for 18 months. She admitted that she had lapsed into drug use again, and had recently used methamphetamine. She also told the

social worker that she was on probation because of drug activity. Law enforcement officials charged Shanon with child endangerment. (See Pen. Code, § 273a.) She was also wanted for possession of a controlled substance, firearms and ammunition.

On April 1, 2011, respondent Napa County Department of Health and Human Services filed petitions asking the juvenile court to declare Levi and Gabriel to be dependent children. The petitions alleged that the parents had failed to protect and adequately supervise them, because of their substance abuse issues. It alleged that the minors had access to drugs and drug paraphernalia, as well as weapons, in Shanon's home. The petition also noted Shanon's past history of child welfare services because of her drug use and the termination of past reunification services. (See § 300, subd. (b).)

Gabriel did not want to leave Shanon. Levi—then age 17—was distressed about the possibility that he and his brother might be placed in foster care. Levi and Gabriel were not immediately detained, but the department recommended that they be removed from the custody of Shanon and her mother. After an April 2011 hearing, the juvenile court ordered that Levi and Gabriel be removed from Shanon's home. The two brothers were placed together in a foster home. Counsel was appointed for the minors. Reunification services were ordered to be provided. About this time, Shanon disappeared.

In advance of the jurisdiction hearing, the department issued a report recommending that the juvenile court find Levi and Gabriel to be dependent children. The department reported that Shanon had been convicted of two felony and seven misdemeanor offenses. She had an unwavering pattern of drug use, child neglect and criminal conduct, despite the services she had received through the child welfare and probation systems. On April 28, 2011, after an uncontested hearing, the juvenile court found the allegations of the petition to be true and declared Levi and Gabriel to be dependent children. (§ 300, subd. (b).)

In May 2011, the juvenile court granted Sherry L.'s motion to terminate her legal guardianship of Levi. Before the upcoming disposition hearing, the department recommended that the juvenile court deny Shanon reunification services for the minors. The mother was evading law enforcement officials. She had made telephone contact with the department four times that month, but refused to disclose her whereabouts. She also participated in two visits with her sons.

For their part, Levi and Gabriel were reportedly pleased with their foster placement. Levi was focused on graduating from high school and acquiring

the skills needed to become an independent adult. The department acknowledged that Levi would turn 18 in October 2011. (See § 303.) The agency asked the juvenile court to take judicial notice of its own court files in this matter.[3]

Shanon appeared midway through the June 2011 disposition hearing. Her counsel argued that denial of reunification services could not be justified by section 361.5(b)(10), because that provision applied only if reunification services had been terminated in a sibling's prior case. At the conclusion of the hearing, based on findings made by clear and convincing evidence, the juvenile court concluded that the statute should be construed to apply to Gabriel. It denied Shanon any reunification services. (§ 361.5(b)(10).) It found that she had made no progress toward alleviating or mitigating the causes requiring foster placement of the minors.[4]

## II. DENIAL OF REUNIFICATION SERVICES

### A. *Applicability of Statute*

■ Typically, when a dependent child is removed from his or her parent's custody, the juvenile court orders that services be provided to the family in order to facilitate its reunification. (§ 361.5, subd. (a); *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793].) However, reunification services need not be offered under certain circumstances specified by statute. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 739 [110 Cal.Rptr.2d 828, 28 P.3d 876] (*Renee J.*).) Reunification services need not be provided to a parent if the juvenile court finds by clear and convincing evidence that (1) a juvenile court ordered termination of reunification services for a sibling; (2) termination was ordered because that parent failed to reunify with the sibling; (3) the sibling had been removed from that parent's custody pursuant to section 361; and (4) that parent has not subsequently made a reasonable effort to treat the problems that led to the sibling's removal from that parent. (§ 361.5(b)(10).) The juvenile court denied Shanon any reunification services with either Levi or Gabriel, based on this provision.

Shanon contends that the juvenile court erred in denying her reunification services, on several grounds. First, she argues that section 361.5(b)(10) did

---

[3] We have also augmented the record on appeal to include the record of Gabriel's prior dependency.

[4] In September 2011, Shanon was again charged with criminal offenses, including being under the influence of a controlled substance and child endangerment of Tyler.

not authorize the denial of reunification services for Gabriel[5] because such services had never been terminated for one of his siblings. The juvenile court acknowledged as much when it made its order, but concluded that the past termination of reunification services for Gabriel—the same child rather than the sibling specified in the statute—warranted denial of further services.

Shanon urges us to construe section 361.5(b)(10) in a more literal manner. On appeal, the meaning of statutory language presents a question of law for our de novo review. (*D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 203 [89 Cal.Rptr.3d 566]; *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 54 [81 Cal.Rptr.3d 918].) We are guided in our analysis by the California Supreme Court's construction of a different clause of this same subdivision. Finding that the clause was ambiguous, the court concluded that the typical canons of statutory construction provided little assistance in resolving that ambiguity. (*Renee J., supra*, 26 Cal.4th at pp. 739–740.)

The California Supreme Court discerned a legislative intent to restrict the mandatory provision of reunification services if a parent had previously failed at reunification attempts. (*Renee J., supra*, 26 Cal.4th at pp. 739–740, 744.) In so doing, our state's high court acknowledged that the overriding goal of statutory construction is to give effect to the law's purpose. (*Ibid.*; see *D.B. v. Superior Court, supra*, 171 Cal.App.4th at p. 203.) In that context, it chose to give the challenged language of section 361.5(b)(10) a reasonable, commonsense interpretation consistent with the apparent legislative intent. Applying the provision in a practical rather than a technical manner, the court chose wise policy over an absurd result. (*Renee J., supra*, 26 Cal.4th at pp. 743–744.)

In a similar manner, we find the language of section 361.5(b)(10) to be ambiguous. Rather than applying technical rules of statutory construction, we construe the subdivision in a manner that most comports with the Legislature's intent. (See *Renee J., supra*, 26 Cal.4th at p. 744.) The intent of subdivision (b)(10) is to allow juvenile courts to deny reunification services if a parent has already failed at attempted reunification. In these circumstances, providing additional reunification services may be fruitless. (*Renee J., supra*, 26 Cal.4th at pp. 739–740, 744; see *D.B. v. Superior Court, supra*, 171 Cal.App.4th at p. 202.) Clearly, if the Legislature did not intend for the juvenile court to be required to offer Shanon reunification services in Levi's case after she failed to reunify with Gabriel in an earlier dependency proceeding, it would not have intended that such services had to be offered to her in the dependency proceeding of Gabriel, the same child with whom she

---

[5] Shanon cannot raise this challenge with regard to Levi's dependency, because in his case, the termination of reunification services provided to Shanon on behalf of Levi's sibling Gabriel from 2007 to 2008 meets the specific statutory requirements of section 361.5(b)(10).

failed to reunify in that earlier proceeding. When the reason is the same, the rule should be the same. (See Civ. Code, § 3511.)

A statute should not be given a literal meaning if to do so would create unintended, absurd consequences. Instead, "intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment." (*In re Michele D.* (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164]; see *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99 [42 Cal.Rptr.3d 504].) To construe section 361.5(b)(10) in the manner that Shanon proposes would lead to an absurd result. (See *Renee J., supra,* 26 Cal.4th at pp. 743–744; *D.B. v. Superior Court, supra,* 171 Cal.App.4th at pp. 203–204; *Marshall M. v. Superior Court* (1999) 75 Cal.App.4th 48, 55 [88 Cal.Rptr.2d 891]; *In re Joshua M.* (1998) 66 Cal.App.4th 458, 471 [78 Cal.Rptr.2d 110].) In an era of dwindling resources, the state may reasonably focus its reunification efforts on those families most likely to be reconciled. (*Renee J., supra,* 26 Cal.4th at p. 744; *In re Joshua M., supra,* 66 Cal.App.4th at p. 471.) We are satisfied that the juvenile court's denial of further reunification services to Shanon for Gabriel was consistent with the legislative intent and thus fell within the spirit of the statute.

## B. *Mother's Efforts*

█ Next, Shanon asserts that the juvenile court erred by applying this statutory provision to deny her reunification services because evidence supported a finding that she made continuing efforts to overcome the issues that led to Gabriel's removal. In order to support a denial of reunification services, the statute requires the court to find that since the earlier failure of reunification, the parent has not made a reasonable effort to treat the problems that led to the child's removal. (See § 361.5(b)(10).) We review an order denying reunification services by determining if substantial evidence supports it. (*Cheryl P. v. Superior Court, supra,* 139 Cal.App.4th at p. 96; see *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 599–600 [110 Cal.Rptr.2d 679].) In so doing, we resolve all conflicts in the evidence in favor of the juvenile court's finding. (*Francisco G. v. Superior Court, supra,* at p. 600.)

The evidence before the juvenile court supported its conclusion that Shanon failed to make reasonable efforts to treat her drug issues. She contends that she attended substance abuse programs, stayed in contact with her sponsor and provided loving and attentive care for her children. Even if we accept these asserted facts as true, they do not counter the many other factors supporting the juvenile court's finding. By 2011, Shanon remained enmeshed in a drug life that posed a danger to her children. At the time of the

juvenile court's order, she was unable to provide an ongoing, positive influence in the lives of her sons because she was evading arrest on drug and weapons charges.

In October 2007, Shanon did not participate in reunification services because she did not believe that she needed to make any changes in her life as she did nothing wrong. In May 2011, she continued the same denials of any wrongdoing. One cannot correct a problem one fails to acknowledge. The juvenile court record provides substantial evidence supporting the conclusion that Shanon had failed to make reasonable efforts to treat the drug issues underlying these dependency matters.

## C. *Abuse of Discretion*

 Alternatively, Shanon contends that even if the statutory provision applies to the case before us, the juvenile court abused its discretion by denying her reunification · services for both Gabriel and Levi. Section 361.5(b)(10) does not require the juvenile court to deny reunification services, but merely gives it the authority to do so. (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 [118 Cal.Rptr.2d 118].) If the court finds by clear and convincing evidence that reunification is in the best interest of the child, it retains authority to order a further round of reunification services. (§ 361.5, subd. (c); *In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116 [118 Cal.Rptr.3d 856]; *In re Albert T.* (2006) 144 Cal.App.4th 207, 218, fn. 5 [50 Cal.Rptr.3d 227].) Thus, even if the juvenile court found sufficient evidence that Shanon's efforts to deal with her drug problem had not been adequate in the past, it could have focused on any significant changes in her lifestyle since the initial termination of reunification services and thus, had discretion to conclude that further reunification services would not have been fruitless. (See *Renee J. v. Superior Court, supra,* 96 Cal.App.4th at p. 1464.)

In the case before us, the juvenile court did not exercise its discretion to award Shanon further reunification services. It found that she had made *no progress* toward alleviating or mitigating the causes for the removal of Levi and Gabriel. This finding effectively counters Shanon's argument that her progress in other areas justified the provision of further reunification services so strongly that for the juvenile court to deny them constituted an abuse of discretion. Shanon bears the burden of proof that her sons would be served by offering her further reunification services. (See, e.g., *In re Ethan N.* (2004) 122 Cal.App.4th 55, 66 [18 Cal.Rptr.3d 504].) Having reviewed the entire record carefully, we are satisfied that she has demonstrated no basis for setting aside the juvenile court's decision to deny reunification services. (See, e.g., *D.B. v. Superior Court, supra,* 171 Cal.App.4th at p. 206.)

The juvenile court order is affirmed.

Ruvolo, P. J., and Rivera, J., concurred.