Filed 11/25/24  In re A.K. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>K.K.,<br><br>        Defendant and Appellant. | A170331<br><br>(San Francisco County Super. Ct. No. JD233341) |

**MEMORANDUM OPINION**

At a contested disposition hearing held on April 26, 2024, the juvenile court bypassed K.K. (mother) for reunification services as to her son, A.K., due to her failure to reunify with A.K.'s older half-sister.  (Welf. & Inst. Code, § 361.5, subd. (b)(10)(A).)[1]  Mother appeals.  We will affirm the order.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.  We resolve this case by memorandum opinion.  (Cal. Stds. of Jud. Admin., § 8.1.)  We do not recite the factual and procedural background because our opinion is unpublished and the parties know, or should know, "the facts of the case and its procedural history."  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely

Mother gave birth to A.K.'s half-sister in July 2017, and both mother and the newborn tested positive for methamphetamine and marijuana at the time. The child was removed from mother's custody and declared a dependent of Humboldt County based on findings she was at risk due to mother's substance abuse and untreated mental health issues. Mother was offered reunification services but had no contact with the social services agency. In March 2018, her reunification services were terminated, the case was closed and sole custody was awarded to the baby's father.

In November 2023, about six and a half years after mother initially lost physical custody of her daughter, A.K. came to the attention of the San Francisco Health and Human Services Agency (the Agency), also as a newborn, due to an emergency referral from the hospital that mother and A.K.'s father were struggling with mental health and substance abuse issues. Mother was suspected of struggling with possible bipolar disorder, psychosis and methamphetamine use disorder. She had been admitted to the hospital for preeclampsia, but hospital staff observed her having auditory hallucinations and talking to herself and knew she had been hospitalized about five months earlier (on May 2, 2023) for swinging a hammer; and she disclosed to hospital staff that she had received limited prenatal care from a street outreach team and that both she and A.K.'s father had been using methamphetamines during her pregnancy.

When the emergency social worker met with the parents at the hospital, they reported they were homeless, living together in a tent in San Francisco. Mother told the social worker she had started smoking marijuana at age 16 and methamphetamines shortly after meeting father.

reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].)

2

She stated she had used both substances throughout A.K.'s pregnancy but had not used them since being admitted to the hospital. She reported being diagnosed with bipolar disorder but denied psychosis.

Mother was also asked about her past substance abuse treatment. She reported seeking treatment three times: once, at age 16, she had completed a substance abuse treatment program for marijuana use, which was about a decade before the prior dependency case in Humbolt County was opened. She also said she attended an inpatient treatment program in Humboldt County at an unspecified time for about two weeks and "did not finish due to family challenges." And she said she attended another inpatient treatment program at an unspecified time in San Francisco and "only completed 41 days due to family challenges."

On November 21, 2023, the Agency initiated this case, A.K. was ordered detained and the juvenile court sustained allegations that mother had a long history of untreated mental health issues for which she had previously been hospitalized (in May 2023) and a long history of substance abuse issues, both of which placed him at risk.

Once mother came to the Agency's attention, mother was slow to enroll in substance abuse treatment. When first contacted by the emergency response worker at the hospital, she expressed interest in enrolling in an in-patient program (Epiphany Center), but a few days later she refused to talk to the social worker and went to the treatment center but stayed for just two days (by her own account, "left the place instead of getting kicked out"). About a month later, she denied to the social worker she had used methamphetamine while pregnant and two days later, was arrested and jailed. While incarcerated, she again expressed a willingness to return to the treatment program but only because she thought it meant her baby would be

3

returned to her, and again denied methamphetamine use during her pregnancy, telling the social worker she had lied to the emergency response worker about that. After her release from jail, she entered a program at Progress Foundation for a short period and another at "Hummingbird" for two weeks but left due to insurance issues. Then on April 11, 2024, she entered a detox program and by the time of the contested disposition hearing on April 26 had been in another substance abuse program (Billie Holiday) for two days, waiting to get accepted back into Epiphany Center, which was insisting she remain sober and take her medication as a condition of entry.

We perceive no error in the court's ruling. We acknowledge and laud mother's efforts to enroll in substance abuse treatment, which began in earnest a couple of months after A.K. was removed from her custody. And we also acknowledge that her ability to appreciate the need to access substance abuse treatment may have been affected to some degree by her mental health challenges (an issue she does not raise on appeal). But there is substantial evidence, measured by the clear and convincing standard, that she failed to make reasonable efforts to address her substance abuse problems between the time she lost custody of her daughter in 2017 and the disposition hearing held in this case regarding her son on April 26, 2024. (See *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1274 [under § 361.5, subd. (b) bypass provision, juvenile court must consider entire time span between earliest time a sibling was removed from the parent's custody in prior case and dispositional hearing in current case].)

The Agency proved mother made, at most, two aborted attempts to seek treatment for methamphetamine abuse before this case was filed: she told the emergency response worker at the hospital she attended one substance

4

abuse program for 2 weeks and another for 41 days.[2] She did not say when she did this, but even if the juvenile court assumed it was after she lost custody of her daughter, those two brief, aborted efforts comprise a minimal effort to address her substance abuse problem during the six-and-a-half-year period between the loss of custody of her daughter and the filing of this case. And even after she came to the Agency's attention regarding her son, A.K., mother was still in denial about her methamphetamine problem: she retracted her admission to the emergency response worker that she had used methamphetamine while pregnant, missed most of her drug tests and then delayed for several months before finally pursuing treatment in earnest, until nearly the eve of the contested disposition hearing. "One cannot correct a problem one fails to acknowledge" (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197) or, as in this case, take seriously. Cases have affirmed bypass orders in similar circumstances for parents with lengthy struggles with drug addiction, despite some efforts to seek treatment. (See *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1118, 1122-1123 [mother with lengthy drug problem who enrolled in substance abuse program several months after minor was detained, denied she had a problem until contested hearing, provided 14 negative drug tests and professed new dedication to sobriety properly bypassed for reunification services; "mother's efforts came extremely late, not only in terms of her many years of addiction, but also in terms of this particular minor"]; see also *Gabriel K.,* at pp. 197-198; *In re Lana S.* (2012) 207 Cal.App.4th 94, 108-109.)

---

[2] Mother's assertion the Agency had no information about what mother had done to seek past treatment is inaccurate; the Agency only lacked information about the specific timing of her past attempts.

Nor did the juvenile court abuse its discretion in concluding mother failed to prove by clear and convincing evidence that reunification services would be in A.K.'s best interests.  (See § 361.5, subd. (c)(2).)  Mother's sole argument is that because she and father are an intact couple and he was receiving reunification services, the court abused its discretion in not ordering them for her too.  But mother cites no legal authority supporting that assertion, and it is not uncommon for only one parent to receive services.  We agree with the Agency that if the Legislature intended that as long as one parent is not bypassed for reunification services then neither parent can be bypassed, it would have said so explicitly, but it did not.  Furthermore, "[o]ne factor that is essential—and hence necessary—to the assessment of a child's best interest is whether there is ' "some 'reasonable basis to conclude' " ' that reunification is possible; if it is not, offering reunification services that are destined to fail is not in the child's best interest."  (*Jayden M.*, *supra*, 93 Cal.App.5th at pp. 1272-1273.)  Mother does not argue that she proved there was some basis to conclude reunification is possible.  Given the many impediments to reunification indicated by this record, we accept her silence as a concession that there was no basis to so conclude.

## DISPOSITION

The disposition order is affirmed.

6

STEWART, P.J.

We concur.

RICHMAN, J.

DESAUTELS, J.

*In re A.K.* (A170331)