Filed 4/29/21  Modified and Certified for Pub. 5/28/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of EMILIE D.L.M. and CARLOS C. | 2d Civ. No. B304344 (Super. Ct. No. 19FL-0484) (San Luis Obispo County) |
| EMILIE D.L.M, <br><br> Respondent, <br><br> v. <br><br> CARLOS C., <br><br> Appellant. | |

Carlos C. appeals an order of the family law court denying his petition filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention).  (22 U.S.C. § 9001 et seq.)[1]  We conclude that Carlos

---

[1] All further statutory references are to Title 22 of the United States Code.

C. did not bear his burden of establishing the existence of ameliorative measures to ensure his children's safety and affirm.

This appeal concerns an international custody dispute involving the two minor children of an American mother and a Chilean father. In 2016, the parties relocated to Chile from California. There, the mother, Emilie D.L.M., was subjected to acts of domestic violence and emotional abuse by her husband Carlos C., sometimes committed in the presence of the children. Frequently, the violence was occasioned by Carlos C.'s excessive alcohol consumption. Following an unsuccessful family vacation to California in 2019, Emilie D.L.M. and the children refused to return to Chile. She then filed a petition to dissolve the marriage and requested a domestic violence restraining order. In response, Carlos C. filed a petition for the return of the children to Chile pursuant to the Hague Convention. Following a lengthy evidentiary hearing, the family law court concluded, among other things, that Emilie D.L.M. established by clear and convincing evidence that returning the children to Chile would subject them to a grave risk of harm.

*FACTUAL AND PROCEDURAL HISTORY*

Carlos C. and Emilie D.L.M. met while students at the University of California Davis Law School. Carlos C., a Chilean native, held a law degree in Chile, and was pursuing an advanced law degree at Davis. Following law school, Emilie D.L.M. passed the California state bar exam and accepted a litigation position with a Bay Area law firm. Carlos C., a permanent resident of the United States, established a legal translation service in the Bay Area.

In 2006, the couple wed and, within seven years, had two children. Emilie D.L.M. soon realized that Carlos C. frequently

2

drank alcohol and became verbally abusive to her when he was intoxicated. In 2006, and again in 2011, he was arrested and subsequently convicted of driving under the influence of alcohol.

In September 2016, the parties and children relocated to Carlos C.'s hometown of La Serena, Chile. Carlos C.'s mother and his large extended family lived nearby.

In Chile, Carlos C. established a law practice and also worked as a law professor. Emilie D.L.M. worked remotely as an independent contractor for a California law firm. The couple paid income taxes in the United States and Chile. Their children were bilingual and held dual American-Chilean citizenships. The children enrolled in schools, played with paternal cousins, and participated in music, sports, and social activities in La Serena.

In 2019, the family took a vacation to Hawaii and then to Lake Tahoe, California. During the vacation, Carlos C. consumed excessive alcohol and became verbally and physically abusive to Emilie D.L.M.

Following the 2019 California vacation, Carlos C. sent a text to Emilie D.L.M. stating, "There is nothing left for us after the past two weeks. Don't bother coming back to Chile. We'll make arrangements later on regarding your belongings." Although Emilie D.L.M. and the children had return airline tickets to Chile, they remained in California. Several weeks later, Emilie D.L.M. filed a petition to dissolve her marriage to Carlos C. and later requested a temporary restraining order against him.

Carlos C., who had returned to Chile in the meantime, returned to California. He visited unsupervised with the children for three days. Emilie D.L.M.'s mother required Carlos C. to sign an agreement that promised he would not consume alcohol while

3

visiting the children. Carlos C. testified that he signed the agreement without reading it and under pressure from his mother-in-law. He violated the agreement by consuming alcohol during the three days of visitation with his children.

Carlos C. then returned to Chile where he filed a family law action and a Hague Convention petition seeking repatriation of the children. In December 2019, the San Luis Obispo County family law court heard the petition and Emilie D.L.M.'s request for a temporary restraining order.

*Family Law Evidentiary Hearing*

At the contested family law hearing, Emilie D.L.M. testified that Carlos C.'s drinking "suddenly increased after the birth of [their] children and increased drastically" after moving to Chile. She described several occasions when she concealed the keys to Carlos C.'s vehicle to prevent him from driving while intoxicated.

Emilie D.L.M. also described incidents of domestic violence and emotional abuse, including sexual insults, some of which occurred in the children's presence. On one occasion, Carlos C. threw her to the bathroom floor, causing her to bruise her face against the bathtub. On another, he kicked her in her side and legs, causing her to fall from bed. In August 2018, Carlos C. became angry and threw the family television out the door as Emilie D.L.M. and the children were watching it. On Chilean Independence Day, Carlos C. became intoxicated at the home of his uncle. As Emilie D.L.M. drove everyone home, Carlos C. kicked the windshield and insisted on driving. He pushed Emilie D.L.M. from the vehicle as the children screamed. The couple's minor daughter physically struggled with Carlos C. to prevent him from driving. Carlos C. overwhelmed his daughter and drove

4

away until his uncle blocked the road. In the spring of 2019, Carlos C. threatened to kill the family dog to "teach [Emilie D.L.M.] a lesson." One evening, Carlos C. locked Emilie D.L.M. out of the bedroom, only to shove her to the floor three times after he relented and opened the door. Carlos C. also demanded money from her and threatened her with harm if she did not pay him. Emilie D.L.M.'s legal earnings were a critical source of the household funding.

Carlos C. also ridiculed his daughter's intellect and compared her unfavorably to himself and her brother. During the Hawaiian vacation, Carlos C. kicked Emilie D.L.M. from the bed where she slept with her son. The child awoke and began to cry. Carlos C. then spit on Emilie D.L.M. and the child.

Carlos C. testified and denied that he consumed alcohol excessively or that he committed any acts of domestic violence.

*Family Law Court Decision*

Following the hearing, the family law court issued a comprehensive written decision. The court found many of Emilie D.L.M.'s accounts of incidents of domestic violence and emotional abuse credible, but others not. The court also found that Carlos C. consumed alcohol excessively and frequently and that Emilie D.L.M. consumed alcohol excessively as well. The court expressly found that Carlos C. was not credible regarding the extent of his alcohol consumption, his denial of the domestic violence incidents, and his denial of his emotional abuse of Emilie D.L.M. in the children's presence.

The family law court then concluded that Emilie D.L.M. established by clear and convincing evidence that return of the children to Carlos C.'s custody in Chile presents a grave risk to their physical and psychological well-being. Citing the Chilean

5

Independence Day incident, the court concluded that Carlos C. "did not seem to be able to control his behavior in front of the children, particularly when drinking." The court also pointed out that Carlos C. denied that he drank alcohol excessively and it inferred that he would continue to drink excessively and expose the children to a grave risk of harm: "If the children are returned to [Carlos C.] at this time, there is no effective way to monitor [his] actions with the children or enforce the orders. For all of these reasons, the court cannot find that ameliorative measures will eliminate the grave risk to the children."

Carlos C. appeals and contends that the family law court erred by not adequately considering ameliorative measures that might allow for the children's return to Chile.

## DISCUSSION

Carlos C. argues that the family law court did not consider "the full panoply of arrangements" that would safeguard the children in his care in Chile. (*Blondin v. Dubois* (1999) 189 F.3d 240, 242 [trial court should consider options under foreign law that would protect the repatriated child].)

The Hague Convention provides a legal mechanism for the prompt return of a child taken by one parent across international borders in violation of the other parent's custodial rights. (§ 9001; *Abbott v. Abbott* (2010) 560 U.S. 1, 9.) A petitioner under the Hague Convention bears the burden of proving the child's wrongful removal or retention by a preponderance of the evidence. (§ 9003(e)(1).) If the petitioner succeeds in showing a wrongful removal, the Hague Convention requires repatriation of the child to its county of habitual residence unless an exception to repatriation exists. (§ 9003(e)(2)(A).) One exception is that the child's repatriation presents a grave risk of physical or

psychological harm to the child. (*Monasky v. Taglieri* (2020) 589 U.S. -. - [206 L.Ed.2d 9, 22].) This exception must be established by clear and convincing evidence. (§ 9003(e)(2)(A).)

There exists a judicial exception, however, to the "grave risk of harm" exception. The trial court may order the return of a child despite a finding of grave risk of harm if ameliorative measures by the parents or authorities can reduce the grave risk of harm. (*Saada v. Golan* (2d Cir. 2019) 930 F.3d 533, 539.) The court exercises its discretion in determining the existence of and effectiveness of ameliorative measures. (*Acosta v. Acosta* (8th Cir. 2013) 725 F.3d 868, 877.) The determination whether enforceable ameliorative measures exist in a particular case is "'inherently fact-bound'" and the petitioner urging the measures bears the burden of proof. (*Simcox v Simcox* (6th Cir. 2007) 511 F.3d 594, 606 [ameliorative measures viewed skeptically in cases involving abusive spouse]; *Maurizio R. v. L.C.* (2011) 201 Cal.App.4th 616, 639.)

As ameliorative measures, Carlos C. provided evidence at trial that Chilean laws punish acts of domestic violence and that Chilean courts protect domestic violence victims through protective orders. The family law court properly found, however, that these ameliorative measures would be ineffective here because Carlos C. refuses to acknowledge his excessive drinking or domestic violence. In the context of a dependency action, the court in *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197, observed that "[o]ne cannot correct a problem one fails to acknowledge." Even following his written promise to forbear from alcohol consumption during visitation with his children, Carlos C. could not keep his promise. Given Carlos C.'s failure to acknowledge his excessive drinking and acts of domestic violence,

7

as well as his repeated acts of driving while intoxicated, there are no ameliorative measures that will mitigate the grave risk of harm to his children.  (*Simcox v. Simcox, supra,* 511 F.3d 594, 606 [collecting decisions where courts have been skeptical of ameliorative measures in cases involving spousal abuse].)  It is a reasonable inference from the evidence that Carlos C. will continue to drink to excess and drive while intoxicated, thus exposing his children to a grave risk of harm.  Carlos C. has not borne his burden of establishing other ameliorative measures that would protect the children from his excessive drinking and abusive behavior.

The order is affirmed.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

Comstock & Wagner, Stephen A. Wagner for Appellant.

James Alex Karagianides for Respondent.

Filed 5/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of EMILIE D.L.M. and CARLOS C. | 2d Civ. No. B304344 (Super. Ct. No. 19FL-0484) (San Luis Obispo County) |
| EMILIE D.L.M, Respondent, v. CARLOS C., Appellant. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on April 29, 2021, be modified as follows:

1. On page 1, the following paragraph is to be inserted at the beginning of the opinion as the opening paragraph:

> Courts look to the Hague Convention to decide custody disputes involving a child's alleged wrongful removal from her or his country of habitual residence. Even when a child's repatriation presents a grave risk of physical or psychological harm to the child, repatriation may still be required if a parent establishes the existence of ameliorative measures. Here we conclude that the parent did not establish this exception.

2. On page 2, approximately middle of the first full paragraph, the word "unsuccessful" is changed to "unpleasant," so the sentence begins, "Following an unpleasant family vacation …"

3. On page 6, line 9 in the second paragraph following DISCUSSION, the word "county" is changed to "country," so lines 8-9 read," "the Hague Convention requires repatriation of the child to its country of habitual residence unless an exception …"

4. On page 7, the first line in the first full paragraph, "There exists a judicial exception, however, to the …" is changed to "There exists, however, a judicial exception to the …."

There is no change in the judgment.

The opinion in the above-entitled matter filed on April 29, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

GILBERT, P.J.        YEGAN, J.        PERREN, J.

2