Filed 9/3/24  In re Wyatt D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re WYATT D. et al., Persons Coming Under the Juvenile Court Law. | B329290 (Los Angeles County Super. Ct. No. 22CCJP01429B-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. D.D., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

John L., in pro. per., for Defendant and Appellant D.D.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant D.D. (father)[1] appeals from the juvenile court's orders terminating dependency jurisdiction over his children, Wyatt D. (Wyatt, born Oct. 2006) and Shane D. (Shane, born Mar. 2013),[2] and granting sole physical custody of minors to mother L.D. (mother),[3] joint legal custody to mother and father (with tie-breaking authority to mother), and monitored visits to father.

We affirm.

## BACKGROUND

I. *The Family*

Mother and father, who are divorced, are the parents of four children. Only two of their children—Wyatt and Shane—are still minors and the subjects of this appeal.

---

[1]    Father is also known as John L.

[2]    We refer to Wyatt and Shane, collectively, as minors.

[3]    Mother is not a party to this appeal.

2

II. *Referral and Investigation*

In March 2022, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that Wyatt had choked and sat on Shane when mother had left the children home alone.

As part of DCFS's ensuing investigation, a social worker interviewed Shane and asked him about his relationship with father. Shane stated, "'my dad has anger issues and sometimes breaks things'" and "'my dad hits me in the stomach with a closed fist[.]'" Shane reported that father had previously "kicked him in the stomach and . . . spun him with both hands causing Shane to lose his balance and fall." Father denied Shane's allegations.

III. *Exercise of Dependency Jurisdiction*

On April 14, 2022, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minors.[4] At the adjudication hearing held on August 17, 2022, the court sustained amended counts under Welfare and Institutions Code section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling).[5] As amended, the sustained counts state: "[F]ather . . . inappropriately disciplined the child, Shane. Such inappropriate discipline was excessive and caused . . . Shane unreasonable pain and suffering. The inappropriate discipline of . . . Shane by . . . father endangers . . . Shane's physical health, safety and well-being, creates a detrimental home environment

---

[4] Minors' older sister, K.D. (born May 2005), was also a subject of the dependency petition. Because K.D. is no longer a minor and is not a subject of this appeal, we do not discuss her further.

[5] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

and places . . . Shane, and the child's siblings, K[.D.] and Wyatt, at risk of serious physical harm, damage, and physical abuse." Mother was deemed nonoffending.

The juvenile court declared minors dependents of the court, removed them from father, and placed them with mother under DCFS supervision. Father was granted monitored visitation with minors.

Father's court-ordered case plan consisted of developmentally appropriate parenting classes; individual counseling to address all case issues, including anger management, appropriate discipline, and increasing protective capacities; and an evaluation pursuant to Evidence Code section 730.[6] Father was also ordered to take all prescribed psychotropic medications.

IV. *February 2023 Status Review Report*

According to the section 364 status review report filed by DCFS in February 2023, minors continued to reside with mother, with whom they reported feeling safe and happy. However, on January 20, 2023, Shane's school principal reported that he had made comments in the preceding two weeks about hurting and killing himself. A school psychologist had conducted threat

---

[6]     Evidence Code section 730 provides, in part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required."

4

assessments, and Shane had not been determined to be a direct threat to himself.

Father had completed a 10-week, 30-hour parenting program. Father reported participating in individual counseling and taking prescribed medication. Father's psychologist confirmed that he had been providing individual psychotherapy to father since October 2022.

Initially, Shane had not wanted contact with father and refused visits in July and August 2022. Shane agreed to four monitored phone/video calls with father in September and October 2022, during which father acted appropriately. Father had three monitored in-person visits with Shane in November and December 2022. During one of the in-person visits, father was confrontational and raised his voice at the DCFS social worker in Shane's presence.

From July to December 2022, Wyatt refused phone or in-person contact with father. In late January 2023, however, Wyatt agreed to in-person visitation with father.

V. *Judicial Review Hearing (Feb. 15, 2023)*

The juvenile court conducted a section 364 judicial review hearing on February 15, 2023. The court found that the parents were in partial compliance with their case plans. The court found that continued jurisdiction and minors' placement was necessary and appropriate. The court kept father's visits with minors monitored, with DCFS having the discretion to liberalize. The court admonished the parents not to say anything disparaging about the other parent in front of the children.

VI. *April 2023 Status Review Report*

According to a status review report filed by DCFS on April 21, 2023, father had two monitored visits with Wyatt and

three monitored visits with Shane during the reporting period. When the DCFS social worker arrived at mother's home on March 9, 2023, to pick up minors for a monitored visit with father, the social worker noticed that Shane had a mark on his face. Shane reported that Wyatt bit him, which Wyatt admitted. Mother reported that this incident could have occurred when she walked out of the living room to get clothing for Wyatt before minors left for their visit with father. The social worker reminded mother to not leave minors alone without adult supervision. Mother agreed. When minors arrived for their visit, father asked Shane what had happened to his face. Shane reported the bite. In front of minors, father continued to blame mother for DCFS's involvement and stated that this would not occur in his care.

DCFS recommended that dependency jurisdiction be terminated with mother having sole physical and legal custody of minors.

VII. *Judicial Review Hearing (May 1, 2023)*

The juvenile court conducted another section 364 judicial review hearing on May 1, 2023.

A. <u>Father's exhibits</u>

The court admitted father's five exhibits (A through E) and noted that they would be "given the appropriate weight . . . ."

Exhibit A was the Evidence Code section 730 psychiatric evaluation of father conducted by Dr. Suzanne M. Dupée. As part of the evaluation, Dr. Dupée spoke to the psychiatrist who had been seeing father since 2006. The psychiatrist described father as a very intelligent, kind, and compassionate man, who was also impulsive with "social judgment problems" and "poor boundaries that get him in trouble." Dr. Dupée opined that

6

father had attention deficit hyperactivity disorder (ADHD), but that there was no evidence to support a diagnosis of bipolar disorder. Father was under psychiatric care and took medications for his ADHD symptoms. According to Dr. Dupée, "ADHD does not usually impair a parent's ability to parent"; there was "no indication [father] w[ould] physically or emotionally abuse his children due to his ADHD"; father's ADHD was "well managed" by his psychiatrist; and there was "no contraindication to reunification with his children."

Exhibit B was a letter, dated April 28, 2023, from a licensed marriage and family therapist, stating that he was currently meeting with father "for mental health therapy, for issues including but not limited to parenting, family relationships, and interpersonal relationships."

Exhibit C was the full text of an October 24, 2017, order denying a petition for interim order of suspension brought by the executive director of the Medical Board of California (Medical Board) and lifting a previously issued interim order suspending father's physician's and surgeon's certificate.

Exhibits D and E were DCFS's June 2022 interim review report and April 2022 detention report, respectively.

B. Father's testimony

Father testified that the parenting class he had taken "was very helpful" and that he "took away quite a bit" about appropriate discipline. When asked on cross-examination if he took any responsibility for the sustained allegations that he had used inappropriate discipline against Shane, father replied: "Pretty significant responsibility, absolutely. As you're aware, the accusation at no time has been made that I spank my children." As to how father inappropriately disciplined his

7

children, he stated: "As you're aware, I deny the unnamed time of specific allegation, but I specifically feel, in certain interactions, that I could speak softer. I could be more considerate of their feelings."

Father was asked if he "ever hit Shane in the stomach with a closed fist[.]" Father responded, "Absolutely not. [¶] And as you're aware, that accusation has no time associated, no location, no context as to why it occurred or what it was allegedly about." Later during his testimony, father stated that he did not have "a hard time in saying very specifically that at no time ha[d] [he] struck this child with a closed fist in his abdomen because it ha[d] not occurred."

Father also testified that he travelled outside of Los Angeles approximately 40 percent of the time.

Father "implore[d]" the juvenile court to "keep this case open" and to "advance [his] custodial time with Shane and Wyatt, so that [he] c[ould] show [the court] that the unmonitored visits w[ould] go fantastically well, and [he] c[ould] once again be the resource for these children that [he] believe[d] they need[ed] . . . ."

C. <u>Social worker's testimony</u>

When asked about the severity of the recent incident when Wyatt bit Shane, the DCFS social worker stated: "I wouldn't describe it as child abuse or neglect. It was something that was addressed immediately as it happened or after it happened. I wouldn't say it's severe." The social worker also testified that father's travel schedule had made it difficult to schedule visits with minors.

D. <u>Juvenile court's orders</u>

After entertaining oral argument, the juvenile court granted mother and father joint legal custody of minors, with tie-

8

breaking authority to mother, and awarded sole physical custody to mother.  The court ordered father's visits with minors to remain monitored.  The court stated:  "Father does appear as though he has done most of the case plan.  However, he still needs to learn to apply what he's gained in these classes in his relationships with his children.  He doesn't acknowledge any wrongdoing."  The court explained that it was ordering tie-breaking authority for mother because it appeared that father travelled a lot for work.

The juvenile court found that the conditions that would justify the initial assumption of jurisdiction under section 300 no longer existed and were not likely to exist if supervision was withdrawn.  Because continued supervision was no longer necessary, the court terminated its jurisdiction.  Termination of jurisdiction was stayed pending receipt of a juvenile custody order.

VIII. *Termination of Jurisdiction*

On May 8, 2023, the juvenile court received, signed, and filed the juvenile custody order.  The order provided father with a minimum of six hours per week of monitored visitation.  The court lifted the stay on its order terminating jurisdiction.

IX. *Appeal*

On May 10, 2023, father filed a notice of appeal from the "[o]rder terminating jurisdiction, order that father have monitored visits, order that mother have sole physical custody, [and] order that mother have tie breaking authority."

**DISCUSSION**

I. *Father's Untimely Arguments*

Although this is an appeal from the termination of dependency jurisdiction and the custody and visitation orders

9

issued upon termination, father's opening brief[7] challenges the sufficiency of the evidence supporting the initial assumption of jurisdiction and removal of minors from his custody. We lack jurisdiction to entertain these arguments.

Section 395, which governs appeals in dependency proceedings, provides in pertinent part that "[a] judgment in a proceeding under [s]ection 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1); see also *In re Michael H.* (2014) 229 Cal.App.4th 1366, 1373.) "The dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable. [Citation.] '"A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." [Citation.]' [Citations.]" (*In re S.B.* (2009) 46 Cal.4th 529, 532.)

Generally, a party must file a notice of appeal within 60 days after the date of the order being appealed. (Cal. Rules of Court, rule 8.406(a).) "'[T]he timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction.' [Citations.] '"[O]nce the deadline [to appeal] expires, the appellate court has no power to entertain the appeal."' [Citations.]" (*In re J.F.* (2019) 39 Cal.App.5th 70, 74–75.)

Here, father did not appeal from the jurisdictional findings and dispositional orders made at the August 17, 2022, adjudication hearing, and the time to do so has long passed. (Cal. Rules of Court, rule 8.406(a).) Nor can father attack these findings and orders in this appeal, which is from subsequent

---

[7]     Father did not file a reply brief.

10

appealable orders.  (See *In re S.B.*, *supra*, 46 Cal.4th at p. 532.)
Thus, to the extent that father's arguments pertain to a lack of
evidence supporting the jurisdictional findings or the
dispositional orders removing minors, his appeal is untimely and
we, in turn, lack jurisdiction to consider those issues.  (See *In re
J.F.*, *supra*, 39 Cal.App.5th at p. 79.)

II.  *Ineffective Assistance of Counsel*

A party represented by counsel in a dependency case is
entitled to *competent* counsel under section 317.5, subdivision (a),
and may "seek relief based on denial of the statutory right."  (*In
re A.R.* (2021) 11 Cal.5th 234, 247.)  Ineffective assistance claims
are generally raised through a petition for habeas corpus.  (*Id.* at
p. 254).  "This is partly because habeas corpus allows for
consideration of matters outside the appellate record, including
evaluation of counsel's decisions and tactics, which is a necessary
focus of many ineffective assistance claims.  [Citation.]  But it is
also because habeas corpus carries with it broad authority to
fashion appropriate relief for the claimed violation.  [Citation.]"
(*Ibid.*)  "An ineffective assistance of counsel claim, however, may
be reviewed on direct appeal when there is no satisfactory
explanation for trial counsel's act or failure to act.  [Citation.]"
(*In re N.M.* (2008) 161 Cal.App.4th 253, 270.)

Father contends that he was provided "radically
inadequate" representation throughout the proceedings,
specifically citing counsel's failure to (1) more robustly defend
father against false allegations made by the Medical Board;
(2) introduce into evidence (a) a photograph of the mark on
Shane's face after Wyatt bit him and (b) father's resume; and
(3) highlight "the extreme tenacity" exhibited by father to visit

11

with minors and the impediments on visitation created by DCFS. (Bolding omitted.)

We cannot conclude from the record before us that there could be no satisfactory explanation for counsel's purported inadequacies. Counsel introduced the full text of an order denying the Medical Board's petition for an interim order of suspension against father; given that the sustained dependency allegations regarding father bore no relation to father's professional conduct, counsel could reason that proving the falsehood of unrelated allegations would not be an effective tactic. And, because the record already contained evidence that Wyatt had left a mark when he bit Shane, counsel could understandably deem it cumulative and unnecessary to introduce a photograph of the mark into evidence. Reasonable counsel could also find father's resume irrelevant to the issues before the juvenile court and conclude that father's efforts at visitation were sufficiently presented.

Accordingly, we decline to review father's ineffective assistance of counsel claim further.

III. *Father Has Not Established That the Juvenile Court Erred in Terminating Jurisdiction*

A. <u>Applicable law</u>

"At a section 364 hearing, 'the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless [DCFS] establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction . . . or that those conditions are likely to exist if supervision is withdrawn.' (§ 364, subd. (c).) Thus, '[w]here, as here, the social services agency recommends termination of jurisdiction, termination will be the

"default result" unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn.' [Citation.]" (*In re J.M.* (2023) 89 Cal.App.5th 95, 110–111.)

B. <u>Standard of review</u>

In terminating its jurisdiction over father's objection, the juvenile court impliedly found that father had failed to meet his burden of proof to justify the continuance of jurisdiction. Thus, in reviewing the court's order, we ask "'whether the evidence compels a finding in favor of . . . [father] as a matter of law,' by examining 'whether . . . [father]'s evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 111.)

C. <u>Analysis</u>

Father presented no evidence compelling a finding by the juvenile court that continued jurisdiction was necessary. Father resisted the termination of jurisdiction not because the conditions justifying the initial exercise of jurisdiction still existed or would likely recur if supervision was withdrawn. Rather, he expressly sought to keep the case open to provide him more time to progress to unmonitored visitation with minors, which would presumably increase his chances of regaining physical custody. This did not necessitate continued jurisdiction, as father can seek a modification of the exit order's custody and visitation provisions in the family court upon a sufficient showing of a significant change of circumstances and that the modification is in minors' best interests. (See §§ 302, 362.4, subd. (b).)

13

IV. *The Juvenile Court's Exit Orders Were Not an Abuse of Discretion*

A. Applicable law

Section 362.4 "empowers the juvenile court, if it terminates its jurisdiction over a dependent minor, to issue 'an order determining the custody of, or visitation with, the child.' (§ 362.4, subd. (a).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 862–863.) "When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' [Citations.]" (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

B. Standard of review

We review an exit order for abuse of discretion. (*In re C.W.*, *supra*, 33 Cal.App.5th at p. 863.) Under that standard, we may not disturb the order "unless the court made an ""arbitrary, capricious or patently absurd determination."" [Citation.]" (*Ibid.*)

C. Analysis

We find no abuse of the juvenile court's "broad discretion to make custody orders" upon its termination of jurisdiction. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) Given father's persistent and total denial of Shane's allegations that father hit and kicked him, the court could reasonably conclude that father continued to pose some risk to minors if he were to be awarded physical custody and unmonitored visitation. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"]; cf. *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring"].)

14

Focusing on the fact that minors were in mother's care when Wyatt strangled Shane (leading to DCFS's involvement) and when Wyatt bit Shane, father contends that the "wrong parent" (bolding & underlining omitted)—that is, mother—was awarded physical custody. We are not persuaded. Mother was deemed nonoffending in the sustained dependency petition. While residing with mother under DCFS supervision, minors reported feeling safe and happy. As for the bite incident, the DCFS social worker opined that it was not severe and did not constitute child abuse or neglect.

The juvenile court also explained that, despite awarding joint legal custody, it granted mother tie-breaking authority because of father's frequent travel. As father testified that he traveled 40 percent of the time, there is nothing arbitrary, capricious, or patently absurd about the court's decision.

**DISPOSITION**

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
     ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


15