Filed 12/11/24  In re Ne.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Ne.L. et al., Persons Coming Under the Juvenile Court Law. | H052009<br>(Santa Cruz County<br> Super. Ct. Nos. 23JU00145,<br> 23JU00146, 23JU00147) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT,<br><br> Plaintiff and Respondent,<br><br> v.<br><br> N.L.,<br><br> Defendant and Appellant. | |

Appellant N.L. (Mother) challenges the juvenile court's dispositional findings and orders removing her youngest son, Na.L., from her custody under Welfare and Institutions Code section 300, subdivision (b).[1]  Mother contends that respondent, the Santa Cruz County Human Services Department (Department), did not meet its burden of proof by clear and convincing evidence to justify removal of Na.L.  We affirm.

---

[1] Unless otherwise specified, all undesignated statutory references are to the Welfare and Institutions Code.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The children in the underlying dependency proceedings are Ne.L. (born 2009), No.L. (born 2010), and Na.L. (born 2015).[2]  Mother challenges only the orders concerning Na.L., whose presumed father is deceased.[3]

### A.   *Events Leading Up to Dependency Proceedings*

Commencing in 2013, the Department received multiple referrals regarding the safety of all three children in Mother's care.  The Department took no action on these referrals, which were evaluated, deemed inconclusive, or determined to be unfounded.  In late 2022, the Department began receiving more frequent referrals from different sources expressing concerns about Mother's mental health and its impact on the children.  Mother also had a history of methamphetamine use.

In August 2022, while in court with the children on an unrelated matter, an individual sent a referral to the Department describing Mother as "delusional" based on her statements, including claims that certain persons wanted to kill her and that her aunt was the governor of Florida.  In December 2022, law enforcement officers responded to reports of a malfunctioned car facing the wrong way of traffic at a busy intersection.  They found Mother with No.L. and Na.L. in the car.  Mother stated that her car was out of gas.  After several failed attempts to move the car off the road, law enforcement officers informed Mother that it would have to be towed.  Mother became angry and tried to lock herself and the children in the car.  No.L. and Na.L. appeared scared.  When No.L. and Na.L. tried to get out of the car, Mother yelled at them to stay inside and slammed the car door to prevent them from leaving.  She yelled, threatened, and fought

---

[2] Each child has a different father, none of whom are parties to this appeal.

[3] Although Mother's notice of appeal identified the orders for all three children, she clarified in her opening brief that she challenges only the orders pertaining to Na.L.  Mother raises no arguments for the orders related to the other two children.  Accordingly, we dismiss as abandoned the portions of the appeal of the orders relating to Ne.L. and No.L.  (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.)

with law enforcement officers in front of the children. The officers arrested Mother for obstruction and battery on a police officer. They noted that Mother appeared to be mentally ill, as she claimed her father was Denzel Washington and she had immunity from the law. When the children's maternal grandmother (Grandmother) arrived at the police department to pick up the children due to Mother's arrest, she stated Mother's mental health had been deteriorating.

Over the next six months, the Department received multiple calls from Na.L.'s school. Na.L. had missed over thirty days of school in three months. When school officials asked Mother about the child's absences, she became angry. She yelled, rambled when speaking, and accused the staff of being part of a terrorist community. Around the same time, it was reported that Mother arrived at a hospital with Na.L., claimed she was pregnant (no pregnancy was found), stated she had "retained products" in her uterus, and that she was "going to infect [her] son." A few weeks later, the children's summer camp reported that Mother said she was taking her two older children out of camp because she believed that they tried to poison her.

When the Department interviewed Na.L., age eight at that time, he expressed suicidal thoughts, which Mother attributed to the death of Na.L.'s father before the child was born, and as a learned behavior from No.L. Mother denied any mental health deterioration, accused the Department of harassing her, and stated people were making false reports against her. The Department sometimes found communicating with Mother difficult because she interrupted and shifted the discussion concerning the children to her belief that she was being stalked, that Grandmother trafficked her as a child, and that she was being racially profiled and discriminated against by the authorities.

As to the children's physical needs, the Department determined, while the family had stints of homelessness, they were at the time of the investigation housed in a clean home with no visible safety hazards. During scheduled and unannounced visits to the

3

home, the Department reported the children appeared clean, had no visible marks or bruises, and Mother had hot food prepared for the children.

### B. The First Six Months of Dependency Proceedings

In July 2023, the Department filed petitions for all three children under section 300, subdivision (b), alleging that the children had suffered, or were at substantial risk of suffering, serious physical harm or illness due to Mother's failure or inability to supervise or protect them, and Mother's inability to provide regular care for the children due to mental illness or substance abuse.[4] The Department did not seek removal of the children from Mother's care but recommended a psychological evaluation for Mother and offered family maintenance services.

Mother contested the allegations and did not participate in the services offered by the Department as she claimed that she and the children were receiving services elsewhere. The juvenile court set the matter for a contested jurisdiction and disposition hearing, which the court continued several times due to new referrals received by the Department and Mother's requests for continuances and settlement conferences.

In December 2023, while the petitions were pending and before the contested hearing, Mother and Ne.L. were involved in a physical altercation in a hotel room where the family had been staying. When law enforcement officers arrived at the scene, they observed bruising under Ne.L.'s left eye, redness to her face, and a bump on her forehead, which Ne.L. stated was caused when Mother struck her. Mother had no visible injuries. The two younger children, No.L. and Na.L., were in the hotel room during the altercation but did not see how it started. They had no visible physical injuries, although Na.L. tried to hit his sister at some point during the altercation to defend Mother but was pulled away.

---

[4] The petition for Ne.L. also included allegations under section 300, subdivision (c), that Mother's mental health issues put Ne.L. at risk of serious emotional damage.

Based on interviews with Mother and the children, the family had been staying at the hotel because Mother believed their home was infested with termites. The two older children claimed the night before the incident, Mother left all three children in the hotel room to spend time with an unidentified male in another room at the hotel. Mother did not return until the next morning as the children were getting ready for school. Ne.L. thought Mother acted strangely when she returned. While Ne.L. was in the bathroom getting ready for school, Mother entered and became angry that Ne.L. was still unprepared for school. Mother took Ne.L.'s makeup from the bathroom counter and threw it at her. Law enforcement officers observed Ne.L.'s body covered in what appeared to be makeup. At some point, Mother took Ne.L.'s cell phone, grabbed Ne.L.'s hair, pulled her to the ground, and the two wrestled on the ground of the hotel room.

Mother's account of the incident differed. Mother said she had to get the children promptly to school in order to attend a court hearing that morning. Mother believed Ne.L. intentionally caused the delay so Mother would be late for her court appearance. Mother told law enforcement officers that she went into the bathroom to take Ne.L.'s cell phone, and her hand accidentally struck Ne.L. on the shoulder. Mother stated that she took Ne.L.'s makeup to discipline her, and that was when Ne.L. grabbed Mother's hair, hit her, and tried to suffocate her. Mother stated that she did not strike Ne.L. and she only attempted to shield herself from her daughter's assault.

Law enforcement officers arrested Mother for child cruelty of Ne.L., and for child endangerment of No.L. and Na.L. In the course of her arrest, law enforcement found methamphetamine in Mother's purse. The court issued an emergency protective order for the children.

When the Department interviewed Mother, she denied hitting Ne.L. and asserted that Ne.L. and Grandmother conspired against her to create the incident. Mother stated that the Department's involvement in this case was part of a larger plan orchestrated by

"the president's attorney," who Mother claimed was a relative, and because "the mayor took bribe money."

After its investigation, the Department amended the petitions for all three children, requested removal of the children from Mother, and recommended that all three children remain with Grandmother. At the detention hearing, Mother addressed the court and requested that her youngest son, Na.L., remain in her care because Grandmother's residence was overcrowded and because Na.L. would have to change schools if he lived with Grandmother. The juvenile court found, based on the police reports and evidence presented, that detention of the children was necessary and ordered supervised visitation for Mother.

### C.  The Jurisdiction and Disposition Hearing

By the time of the contested hearing, the Department had filed its fourth amended petition for Na.L. based on Mother's failure to protect under section 300, subdivision (b), due to mental illness or substance abuse. The petition included the events leading up to the initiation of the proceedings, the physical altercation with Na.L.'s sister, and the methamphetamine found in Mother's purse. The Department amended its case plan to include Mother's participation in a substance use disorder assessment and compliance with random drug testing two or three times per week, in addition to its prior recommendations that Mother undergo a psychological evaluation and counseling services.

At the hearing, the juvenile court first ruled on Mother's objections to the social worker's reports filed by the Department leading up to the hearing. Mother objected to certain statements by witnesses and the children based on hearsay. The court agreed with most of Mother's objections but reserved its determination on admissibility to the end of the hearing.

6

The Department did not call any witnesses but relied on its prior reports. The Department reported that Mother had not participated in the recommended case plan. Mother declined to undergo a psychological evaluation, an assessment for substance use, and random drug testing. Mother stated that testing was not necessary because she was sober. Mother admitted she had a "minor relapse" but stated she had been sober for 10 years and had re-engaged in hypnotherapy to abstain from drug use, which Mother claimed to have worked for her in the past. Mother also declined counseling services offered by the Department, claiming she was receiving counseling elsewhere. When the Department attempted to confirm Mother's participation in counseling, the provider responded that their records only showed canceled appointments.

The Department noted that since their physical altercation, Ne.L. had declined visits with Mother, but visits with No.L. and Na.L. were successful. On a few occasions, Mother inappropriately used Na.L. as a messenger to arrange for more visitation time but was otherwise very attentive to the children's medical needs. Since Na.L.'s removal from Mother, Grandmother reported that he was doing better than expected, but missed Mother.

Mother did not testify at the hearing but admitted exhibits related to the children's academic reports, doctor's notes for Na.L.'s absences from school due to lice, two negative drug test results that Mother obtained independently, a mental health evaluation performed by her medical provider, and an informational email from a clinic for counseling services.[5]

After hearing closing arguments, the juvenile court rendered its decision, finding all three children came within the jurisdiction of the court due to Mother's inability to care for and protect the children as a result of her struggles with mental illness, drug use, or a combination of the two. The court found all the allegations in the amended petition

---

[5] The test results Mother provided were negative for drugs other than cannabis.

to be true, except for the allegation that Mother believed the children poisoned her. As to that allegation, the court found the allegations were based on inadmissible hearsay, for which no exception applied, and there was no corroborating evidence. The court struck the allegation from the petition.

After consideration of the Department's reports and other admitted evidence, the juvenile court found, by clear and convincing evidence, that it was detrimental to all three children to return to Mother's care and that there were no reasonable means by which the children could be protected without removal. The court ordered continued visitation for Mother, family reunification services, and the parties' participation in the Department's recommended case plan. Mother filed a timely appeal from the court's order.

## II.    DISCUSSION

Mother does not challenge the evidentiary support for the court's jurisdictional finding that Na.L. was a minor described by section 300, subdivision (b). Instead, her appeal focuses solely on whether clear and convincing evidence supports the court's order to remove Na.L. from her custody.

"To order a child removed from their parents' physical custody under section 361(c)(1), the juvenile court must find by clear and convincing evidence that (1) there 'would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being' of the child in the parents' home, and (2) 'there are no reasonable means by which the [child's] physical health can be protected without' removal." (*In re Zoe H*. (2024) 104 Cal.App.5th 58, 71, quoting § 361, subd. (c).) We review those findings for substantial evidence. (*Ibid*.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question . . . is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give

8

appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 (*O.B.*).)

We keep in mind that the purpose of a dependency proceeding is not to prosecute a parent, but rather to ensure the safety, protection, and physical and emotional well-being of children who are at risk of being abused or neglected. (§ 300.2, subd. (a); *In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.) " 'The purpose of dependency proceedings is to prevent risk, not ignore it.' [Citation.]" (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.) " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

We first address Mother's contentions regarding the scope of the evidence to be considered on this appeal. Mother does not challenge the court's findings regarding Na.L.'s two older siblings, Ne.L. and No.L. However, she suggests these findings are not relevant to our consideration of whether substantial evidence supports the juvenile court's finding that removal of Na.L. was necessary, as our review should focus solely on evidence specific to Na.L. himself and not his siblings.

The law does not support Mother's position. The Legislature has determined that evidence of a parent's misconduct towards another child is relevant and admissible in dependency cases. Specifically, section 355.1, subdivision (b), states: "[p]roof that either parent . . . who has the care or custody of a minor who is the subject of a petition filed under Section 300 has physically abused, neglected, or cruelly treated another minor shall be admissible in evidence." (See *In re Y.G.* (2009) 175 Cal.App.4th 109, 115-116 [evidence that mother of young child forcibly slapped an unrelated child of the same age was sufficient to support removal orders].) Further, in making disposition orders, the juvenile court may consider any "relevant and material evidence as may be offered[.]" (§ 358, subd. (b)(1); see also § 355, subd. (a) [for jurisdiction, "[a]ny legally admissible

9

evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence"].)

However, here, the evidence supporting removal is not dependent solely on evidence of Mother's abuse of Na.L.'s siblings. Substantial evidence germane to Na.L. supports the juvenile court's findings and order, and the record taken as a whole contains substantial evidence from which the juvenile court could have found it highly probable that there were no reasonable means to protect Na.L. from harm without removing him from Mother's custody.

There is ample evidence that Mother's mental health was on a downward spiral. Law enforcement officers reported Mother attempted to lock herself, No.L., and Na.L. in an inoperative car in the middle of a busy intersection. Mother then fought with the officers in front of Na.L., placing his safety at further risk. Many different people—law enforcement officers, school and camp officials, hospital staff, and social workers— reported Mother's actions and statements that evidenced her deteriorated mental health during their interactions with her. Although Mother initially denied drug use, law enforcement officers later found methamphetamine in her possession. There was substantial evidence that Mother's untreated mental health and substance abuse issues affected her ability to care for Na.L., as evidenced by his frequent absences from school, his statements of self-harm, and his repeated exposure to unsafe situations caused by Mother's combative behaviors with law enforcement and, eventually, her own daughter.

Mother argues that the juvenile court failed to consider alternatives to removal, such as requiring Mother to participate in services, stay in contact with social workers, and abide by all court orders as conditions for Na.L. to be released to her custody. But there is substantial evidence that Na.L.'s removal was the last option available to the Department after Mother was given many opportunities to participate in services designed to promote her custody of the children.

The Department initiated the proceedings as a non-detention petition and left the children in Mother's care while attempting to provide family maintenance services to support her. For almost six months before the physical altercation with Na.L.'s sister, Mother refused to participate in any services offered by the Department, denied that her mental health was compromised or that she was using drugs, and disclaimed any responsibility for the actions that led to the Department's intervention on behalf of her children. Even after law enforcement arrested Mother for child cruelty and for child endangerment, she continued to deny responsibility for her actions, accusing Ne.L., Grandmother, and others of conspiring against her. By the time of the disposition hearing, Mother had not participated in any services outlined in her case plan, refused random drug testing, and failed to undergo the Department's recommended psychological evaluation. In light of Mother's failure to recognize the risks to which she was exposing Na.L., the juvenile court could reasonably conclude that Mother's proposed alternatives would have been insufficient to protect Na.L. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Mother contends that she provided a negative drug test result and other evidence at the hearing to show that she was not using drugs and did not suffer from mental illness. She cites portions of the record showing that she met Na.L.'s physical and emotional needs: she provided a clean home; she fed and kept Na.L. clean, well dressed, and free of any visible bruises or marks; Na.L. expressed feeling safe with Mother; and Grandmother was not worried about Na.L. in Mother's care. However, it is not our function on appeal to reweigh the evidence or resolve evidentiary conflicts, and we defer to the juvenile court's findings and resolutions in favor of the order. (*O.B.*, *supra*, 9 Cal.5th at p. 1008.)

The record demonstrates that Mother loves Na.L. and that Na.L. loves his mother. However, applying the deferential standard of review, we conclude that substantial evidence supports the juvenile court's finding that there were no reasonable means of

protecting Na.L. from harm other than removal.  (*O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012.)

### III.   DISPOSITION

The disposition orders entered on April 10, 2024 related to Na.L. (case No. 23JU00147) are affirmed.  The portions of the appeal of the orders entered on April 10, 2024 related to Ne.L. (case No. 23JU00145) and No.L. (case No. 23JU00146) are dismissed as abandoned.

_____
Greenwood, P. J.

WE CONCUR:

_____
Grover, J.

_____
Danner, J.

H052009
In re Ne.L., et al.; Santa Cruz County HSD v. N.L.